# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

LUCILLE R. RAPHAELSON,

    Plaintiff,

v.

ASHTONWOOD STUD ASSOCIATES, L.P., <u>et al.</u>,

    Defendants.

Case No. 2:08-cv-1070-KJD-RJJ

**ORDER**

    Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (#22). Plaintiff filed a Response in Opposition (#25), to which Defendants filed a Reply (#26).

**I. Facts and Procedural History**

    Defendant Ashley Andrews ("Andrews") is part owner of shares in four thoroughbred stallions, which she shares with non-party Kentucky Blue Stables and the husband ("the Husband") of Plaintiff Lucille Raphaelson ("Raphaelson"). In November 2005, Andrews secretly recorded a telephone conversation with the Husband, in which he revealed that he had been selling almost all of the annual nominations accruing to their jointly-owned shares and retaining all of the proceeds. Andrews alleged that the phone conversation led her to believe that Raphaelson was privy to information regarding the fraudulent sales of the shares. Andrews further alleged the purchase of a

Las Vegas lot, held solely in Raphaelson's name, occurred in the same month that the Husband made $650,000 on the fraudulent sale of the shares of one of the stallions. Andrews claimed that Raphaelson's signature on the deed for the lot appeared to have been written by the same person who signed one of the fraudulent contracts that the Husband had been issuing to cover his unauthorized sales.

On January 23, 2006, Andrews filed a civil action in federal court against Raphaelson, the Husband, and Kentucky Blue Stables, alleging violation of the RICO statute and the Nevada Racketeering Act and several state law tort claims. At the time she filed the complaint, Andrews also filed a <u>lis pendens</u> on the Las Vegas lot held in Raphaelson's name.

On January 18, 2007, Raphaelson filed a motion for summary judgment on all claims against her. On May 4, 2007, the court entered an order denying Raphaelson's motion for summary judgment on the claims for breach of fiduciary duty and accounting, fraud, federal and state RICO violations, and constructive trust. The order did grant summary judgment on the claim of equitable lien.

The jury trial began on October 23, 2007, and, on November 2, 2007, after Andrews had rested her case, the court concluded that she had failed to establish the existence of an "enterprise" under the RICO statute, and granted a non-suit on her state and federal RICO claims. On November 3, 2007, Raphaelson filed a Rule 50 motion on Andrews's claims for breach of fiduciary duty, fraud, and conversion. On November 6, the court granted the Rule 50 motion on the claim for breach of fiduciary duty in favor of Raphaelson. At the conclusion of the trial, the jury found for Raphaelson on Andrews's claims for fraud and conversion. After considering the post-trial motions, the court found for Andrews on her claim for constructive trust against Raphaelson and awarded Andrews $162,500 in the Las Vegas lot because Raphaelson failed to demonstrate where the money for the lot came from.

Plaintiff Raphaelson filed the current Complaint (#1) on August 14, 2008, alleging wrongful use of civil proceedings, abuse of process, and intentional infliction of emotional distress against

Defendants for bringing the original suit against her. On October 27, 2008, Defendants filed the present Motion to Dismiss for Failure to State a Claim (#22).

**II.  Standard of Review for Motion to Dismiss**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Consequently, there is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Iqbal evaluation illustrates a two prong analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. Id. at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. If the allegations state plausible claims for relief, such claims survive the motion to dismiss. Id. at 1950.

**III.  Wrongful Use of Civil Proceedings**

According to the Restatement (Second) of Torts § 674, the tort for wrongful use of civil proceedings is described as follows:

> One who takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if
>
> (a)  he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and

3

    (b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

  Although many jurisdictions recognize this tort, the State of Nevada does not. Plaintiff avers that while not yet having ruled on a claim for wrongful use of civil proceedings, Nevada has left room for the possibility of such a tort. Plaintiff references a case in which the Supreme Court of Nevada ruled that a tort of malicious prosecution could only be brought for a prior criminal case, basing its decision on the Restatement (Second) of Torts § 653. See LaMantia v. Redisi, 38 P.3d 877, 878-79 (Nev. 2002). Plaintiff further avers that, because LaMantia was based on the Restatement, it follows that, like the Restatement, Nevada also recognizes a tort for wrongful use of civil proceedings.

  In LaMantia, the court held that the tort of malicious prosecution could only be sustained when based on an underlying criminal proceeding, but the court did not address the issue of whether an underlying civil proceeding could sustain a claim of wrongful use of civil proceedings. Id. Plaintiff cites no authority for its premise that adoption of one section of the Restatement demands adoption of another section.

  In addition, Plaintiff refers to the 2006 changes to Nevada Supreme Court Rule 1.5(c)(5), which now requires that any contingency fee agreement warn that "a suit brought solely to harass or to coerce a settlement may result in liability for malicious prosecution or abuse of process." Plaintiff avers that this demonstrates Nevada's recognition of the tort of wrongful use of civil proceedings, but Rule 1.5(c)(5) clearly states that the tort of abuse of process is the potential remedy for a vexatious civil case.

  Plaintiff also refers to N.R.S. § 199.320, which assigns criminal liability to the intentional misuse of lawsuits to distress or harass a defendant, inferring that the Nevada legislature intended for there to be a civil remedy arising out of false civil suits. The statute, however, assigns no civil liability and does not imply that a tort for wrongful use of civil proceedings exists.

Finally, Plaintiff fails to demonstrate even one case in Nevada which has recognized that a plaintiff can recover for the tort of wrongful use of civil proceedings. This Court declines to create such a tort for the State of Nevada. Therefore, the Court finds that a claim for wrongful use of civil proceedings is not cognizable under Nevada law.

**IV. Abuse of Process**

The elements of an abuse of process claim are "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." LaMantia, 38 P.3d at 879 (internal citations omitted). The "mere filing of the complaint is insufficient to establish the tort of abuse of process." Laxalt v. McClatchy, 622 F. Supp. 737, 752 (D. Nev. 1985). In addition, there is "no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Prosser on Torts, Abuse of Process § 115, p. 877 (3rd ed.1964).[1]

Here, Plaintiff alleges three specific willful acts of the Defendants that she claims abused the legal process: (1) filing the complaint without probable cause for the RICO claims, (2) refusing to dismiss the RICO claims after discovery revealed no probable cause for them, and (3) filing a lis pendens against Plaintiff's property on the basis of the RICO claims.

The mere filing of the Complaint (#1) is not sufficient to establish abuse of process. In averring that the filing of a complaint coupled with an ulterior motive is sufficient, Plaintiff relies on two cases that are easily distinguished from the present case. In Posadas v. City of Reno, 851 P.2d 438, 445 (Nev. 1993), a police officer, alleging abuse of process, claimed that the original complaint filed against him by the City was being used to convince him to resign from his job, and he further alleged that the city attorney informed him that the charges would be dropped if he agreed to resign. Thus, the willful act of making the offer to drop the charges was abuse of process.

---

[1] Defendant relies heavily on an unpublished case from the District Court of Nevada, Bricklayers & Allied Craftsmen, Local Union No. 3 v. Masonry and Tile Contractors Ass'n of Southern Nev., in which the court held that filing a complaint or allowing the claim to come to its authorized conclusion is not abuse of process, even if done with an ulterior motive. 1990 WL 270784.

In Bull v. McCuskey, a doctor alleging abuse of process claimed not only that the attorney who filed the original complaint had the ulterior motive of forcing a nuisance settlement, but also that the attorney offered to settle for a minimal sum, that he did not undertake adequate investigation of the case, and that he failed to prepare any of the essential expert testimony required by the case. 615 P.2d 957, 960 (Nev. 1980). Again, it was not the filing of the complaint that constituted abuse of process, but rather later willful acts that demonstrated abuse of process. See Laxalt, 622 F. Supp. at 752.

Additionally, carrying out the legal process to its authorized conclusion is not abuse of process. Defendant simply allowed the process to come to its authorized conclusion in refusing to dismiss after discovery and permitting the claims to go to trial. Similarly, filing a lis pendens on a property at issue is a step in carrying out the legal process to its authorized conclusion. Furthermore, the court in the original suit awarded Andrews an interest of $162,500 in the Las Vegas lot on which Andrews filed the lis pendens. Not only was filing the lis pendens not an abuse of process, it was a responsible step in securing a property in which she had a potential interest. Moreover, the lis pendens was not only filed in connection with the RICO claims at issue in this motion, but also with the state tort claims, such as the constructive trust claim on which the $162,500 award was based. Plaintiff's attempt to describe the filing of the lis pendens as an abuse of process, relating it only to the RICO claims, takes the filing of the lis pendens out of context. Lastly, the fact that the district court judge did not grant summary judgment on Andrew's RICO claims against Raphaelson, negates Plaintiff's argument that "any reasonable attorney would find that the action was completely without merit."

The Court finds that Plaintiff has failed to state a claim for abuse of process, because Plaintiff has not alleged any willful acts that rise above the filing of a claim or the carrying out of the legal process to its authorized conclusion.

### V. Intentional Infliction of Emotional Distress

In order to show intentional infliction of emotional distress, "the plaintiff needs to show that there was extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress." State v. Eighth Judicial Dist. Court, 42 P.3d 233, 241 (Nev. 2002) (internal citations omitted). Here, Plaintiff avers that Defendants' "unlawful conduct" caused Plaintiff to suffer emotional distress. As Plaintiff was unable to support any claims for unlawful conduct in her Complaint (#1), she is equally unable to support a claim for intentional infliction of emotional distress caused by that unlawful conduct. Therefore, the Court finds that Plaintiff has failed to state a claim for intentional infliction of emotional distress.

### VI. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (#22) is **GRANTED**;

**IT IS FURTHER ORDERED** that Clerk of the Court enter **JUDGMENT** for Defendants and against Plaintiff.

DATED this 31st day of July 2009.

_____
Kent J. Dawson
United States District Judge